**CASE DESCRIPTION – SUPERIOR COURT**

Case Number: 3AN-18- 06353 CI

| Type of Action | For Court Use Only | |
|---|---|---|
| Check the box that best describes the case. Mark **one** box only. For district court cases, use form CIV-125D. | Case Type | Action Code |
| **Domestic Relations** | | |
| Divorce With Children (or Pregnant) | Div or Cust w/Children | CISDVC |
| Divorce Without Children | Divorce Without Children | CISDIV |
| Uncontested Divorce With Children (or Pregnant) | Div or Cust w/Children | CISUDVC |
| Uncontested Divorce Without Children | Divorce Without Children | CISUDIV |
| Custody (Unmarried Parents) | Div or Cust w/Children | CISCUS |
| Uncontested Custody (Unmarried Parents) | Div or Cust w/Children | CISUCUS |
| Visitation by Person Other than Parent | Domestic Relations Other | CIVIS |
| Property Division – Unmarried Partners | Domestic Relations Other | CISPROP |
| Legal Separation With Children (or Pregnant) | Legal Separation | CICLS |
| Legal Separation Without Children | Legal Separation | CISLS |
| Annulment | Domestic Relations Other | CIANNUL |
| Paternity - Establishment | Domestic Relations Other | CISPAT |
| Paternity - Disestablishment | Domestic Relations Other | CIDPAT |
| Genetic Testing - Failure to Comply with Order for Testing | Domestic Relations Other | CIOSCP |
| Administrative Child Support Order – Modification or Enforcement | Domestic Relations Other | CIPCS |
| PFD or Native Dividend Case | Domestic Relations Other | CIPND |
| Foreign Support Order - Registration, Modification or Enforcement under AS 25.25 | Domestic Relations Other | CIUIFSA |
| Foreign Custody Order – Registration, Modification or Enforcement under AS 25.30 | Domestic Relations Other | DR483 |
| **Both** Foreign Custody & Support Order – Registration, Modification or Enforcement under AS 25.30 and AS 25.25 | Domestic Relations Other | CIFCS |
| Foreign Domestic Relations Order (Not Custody or Support) – Registration, Modification or Enforcement | Domestic Relations Other | CIDRFJ |
| **Landlord/Tenant** | | |
| Eviction (May Include Rent or Damages) | Eviction-Superior Court | CISFED |
| Other Landlord/Tenant (No Eviction) | Civil Superior Court | CISLT |
| **Debt/Contract** | | |
| Debt Collection | Civil Superior Court | CISDEB |
| Claim by Buyer Against Seller of Goods/Services | Civil Superior Court | CISCLAIM |
| Employment – Discrimination | Civil Superior Court | CISEMPD |
| Employment – Other Than Discrimination | Civil Superior Court | CISEMP |
| X Other Contract | Civil Superior Court | CISOCT |
| **Real Property Actions** | | |
| Condemnation | Civil Superior Court | CISCNDM |
| Foreclosure | Civil Superior Court | CISFOR |
| Quiet Title | Civil Superior Court | CISQIT |
| Real Property Tax Foreclosure | Superior Court Misc Petition | CISTAX |
| Other Real Estate Matter | Civil Superior Court | CISREM |
| **Foreign Judgment** | | |
| Registration of Foreign Judgment – SEE DOMESTIC RELATIONS FOR FOREIGN **SUPPORT/CUSTODY** ORDERS | Foreign Judgment Superior Ct | CISFOJ |

CIV-125S (1/18)(cs)
CASE DESCRIPTION FORM – SUPERIOR COURT

Page 1 of 2

| Type of Action | For Court Use Only | |
|---|---|---|
| Check the box that best describes the case. Mark **one** box only. For district court cases, use form CIV-125D. | Case Type | Action Code |
| **Tort** | | |
| Wrongful Death | Civil Superior Court | CISPID |
| Automobile Tort (But Not Wrongful Death) | Civil Superior Court | CISIDA |
| Claim Against Owner of Real Property for Personal Injury | Civil Superior Court | CISPIO |
| Product Liability | Civil Superior Court | CISPL |
| Intentional Tort (e.g., assault, battery, vandalism) | Civil Superior Court | CISIT |
| Slander/Libel/Defamation | Civil Superior Court | CISSLD |
| Other Tort | Civil Superior Court | CISIDO |
| Approval of Minor Settlement – Civil Petition<br>*May also be filed as probate case.* | Superior Court Misc Petition | CISPET |
| **Malpractice** | | |
| Legal Malpractice | Civil Superior Court | CISLMP |
| Medical Malpractice | Civil Superior Court | CISMMP |
| Other Malpractice | Civil Superior Court | CISOMP |
| **Other Civil** | | |
| Election Contest or Recount Appeal | Civil Superior Court | CISELE |
| Change of Name - Adult | Change of Name | CICON |
| Change of Name - Minor | Change of Name | CICONM |
| Confession of Judgment | Civil Superior Court | CISCCONF |
| Structured Settlement – AS 09.60.200 | Superior Court Misc Petition | CISSS |
| Administrative Agency Proceeding – Request for Court Assistance | Superior Court Misc Petition | CISWRNT |
| Arbitration - Action Under Uniform Arbitration Act | Civil Superior Court | CISAP |
| Fraud | Civil Superior Court | CISFRAUD |
| Unfair Trade Practice and Consumer Protection | Civil Superior Court<br>Clerk: Issue form CIV-128 | CISUTP |
| Writ of Habeas Corpus | Civil Superior Court | CIWHC |
| Fish & Game - Abatement & Forfeiture of Equipment | Superior Court Misc Petition | CISAF |
| Appointment of Trustee Counsel | Superior Court Misc Petition | CISTC |
| Other Superior Court Complaint | Civil Superior Court | CISOCI |
| Other Superior Court Petition | Superior Court Misc Petition | CISPET |
| **Post-Conviction Relief to Superior Court** | | |
| Post-Conviction Relief | Post-Conviction Relief-Sup Ct | CISPCR |
| **Appeal to Superior Court - From Administrative Agency** | | |
| Election Contest or Recount Appeal – SEE OTHER CIVIL | | |
| DMV Appeal | Appeal from Admin Agency | CIADDMV |
| Employment Security Appeal | Appeal from Admin Agency | CIADRESA |
| Administrative Agency Appeal - Other | Appeal from Admin Agency | CIADR |
| CSSD License Review Action | Petition for Review or Relief | CICSED |
| Petition for Review from Administrative Agency | Petition for Review or Relief | CIPRA |
| Petition for Relief from Administrative Agency – AS 44.62.305 | Petition for Review or Relief | CIPRLF |
| **Appeal to Superior Court - From District Court** | | |
| Civil Appeal | Appeal from District Court | CIACI2 |
| Criminal Appeal | Appeal from District Court | CIACRM |
| Minor Offense Appeal | Appeal from District Court | CIAMO |
| Small Claims Appeal | Appeal from District Court | CIASC |
| Petition for Review from Civil, Criminal, or Minor Offense Case | Petition for Review or Relief | CIPRD2 |
| Petition for Review from Small Claims | Petition for Review or Relief | CIPRSC |

Case 3:18-cv-00115-TMB   Document 1-1   Filed 05/15/18   Page 2 of 23   Ex. A, p. 2

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT __ANCHORAGE__

BEACON OCCUPATIONAL HEALTH &
SAFETY SERVICES, INC.,
                    Plaintiff(s),
vs.

INDYNE, INC.,
                    Defendant(s).

CASE NO. _3AN-18-6353_ CI

## SUMMONS
## AND
## NOTICE TO BOTH PARTIES
## OF JUDICIAL ASSIGNMENT

To Defendant:   INDYNE, Inc.
~~CSC-Lawyers Incorporating Service Company; 7 St. Paul Street;~~
~~Suite 820, Baltimore MD 21202~~

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at (address): 825 West 4th Avenue, Room 118; Anchorage, AK 99501 within 20 days* after the day you receive this summons.

In addition, a copy of your answer must be sent to:

    Plaintiff's attorney or plaintiff (if unrepresented): Jennifer M. Coughlin
    Address: Landye Bennett Blumstein LLP
            701 West 8th Avenue, Suite 1200; Anchorage, AK 99501

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at www.state.ak.us/courts/forms.htm , to inform the court.

-OR-

If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

## NOTICE OF JUDICIAL ASSIGNMENT

To: Plaintiff and Defendant

You are hereby given notice that this case has been assigned to Judge _Washington_

(SEAL)

_1/19/2018_
Date

CLERK OF COURT
By: _M. Wood_
Deputy Clerk

*The state or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

Jennifer M. Coughlin
Landye Bennett Blumstein LLP
701 West 8th Avenue, Suite 1200
Anchorage, AK 99501
Tel: (907) 276-5152
Facsimile: (907) 276-8433
jenniferc@lbblawyers.com
Attorneys for Beacon Occupational Health & Safety Services, Inc.

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

BEACON OCCUPATIONAL
HEALTH & SAFETY SERVICES,
INC.,

                    Plaintiff,

    v.

INDYNE, INC.,

                    Defendant.

COPY
Original Received

APR 19 2018

Clerk of the Trial Courts

Case No. 3AN-18-~~5635~~ CI
06353

*(left margin, vertical text):* LANDYE BENNETT BLUMSTEIN LLP / 701 WEST 8TH AVENUE, SUITE 1200 / ANCHORAGE, ALASKA 99501 / TELEPHONE (907) 276-5152, FAX (907) 276-8433

## COMPLAINT

    Comes now, Plaintiff Beacon Occupational Health & Safety Services, Inc.

("Beacon OHSS"), by and through its attorneys of record, and for its complaint

alleges as follows:

LANDYE BENNETT BLUMSTEIN LLP
701 WEST 8TH AVENUE, SUITE 1200
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

# FACTUAL ALLEGATIONS

1.    Plaintiff Beacon OHSS is a corporation formed under the laws of the State of Alaska and doing business in Alaska.

2.    Defendant InDyne, Inc. ("InDyne") is a corporation which on information and belief is formed under the laws of the State of Maryland, and is doing business in Alaska.

3.    InDyne and Beacon OHSS entered into a Teaming Agreement dated on or about May 21, 2017, a copy of which is attached as Exhibit A.

4.    Pursuant to the Teaming Agreement, InDyne and Beacon OHSS agreed that they would collaborate on a response to a Solid State Phased Array Radar System ("SSPARS") procurement for the United States Air Force for work to be performed at Clear Air Force Station in Clear, Alaska. As set forth in the Teaming Agreement,

> In the event of a contract award arising out of these premises, the parties agree that InDyne shall be the prime contractor hereinafter, hereinafter referred as 'the Prime,' and Beacon OHSS shall be the Subcontractor, hereinafter referred to as 'the Sub,' for the particular portions of such Program as identified herein. . . ."

5.    Paragraph 1 of the Teaming Agreement states:

> Each party will exert its best efforts to produce a proposal or proposals that will cause the selection of [InDyne] for the Program and the acceptance of [Beacon OHSS] as the subcontractor for the work assigned to [Beacon OHSS] herein, and each party will continue to exert its best efforts towards this objective through any and all negotiations concerning a proposed contract or subcontract that may follow the submission of such proposal or proposals.

6.    Paragraph 6 of the Teaming Agreement states:

COMPLAINT
*Beacon Occupational Health & Safety Services, Inc. v. InDyne, Inc.*, Case No. 3AN-18-   CI
Page 2 of 8
Case 3:18-cv-00115-TMB   Document 1-1   Filed 05/15/18   Page 5 of 23   Ex. A, p. 5

If, during the period of this agreement, a prime contract is awarded to [InDyne] as a result of the proposal, [InDyne] will, subject to the approval of the Customer, if such approval is required under the terms of the Prime contract, regulations and applicable law, enter into negotiations with [Beacon OHSS] for a subcontract to be mutually agreed upon between the parties and subject to the stipulation that such an agreement be reached within a reasonable period of time. *[InDyne] will make every reasonable effort to subcontract to [Beacon OHSS] that portion of the work set forth in the attached Exhibit A of this agreement. Said work is to be performed by [Beacon OHSS] in accordance with the schedule and technical specifications, if any, and at a price, consistent with [Beacon OHSS's] bid proposal. The terms and conditions of the subcontract will be generally consistent with the terms and conditions in the prime contract.* It is agreed that said terms and conditions will not conflict with government rules, regulations and applicable law.

7.     Paragraph 15 of the Teaming Agreement states:

If agreement cannot be reached on the terms of a subcontract, [InDyne] may procure a subcontract for the tasks and items described in Exhibit A through competition, including the Sub. However, before a decision is made to initiate a competition, [Beacon OHSS] shall be notified in writing of the specific area in dispute and shall be afforded the opportunity to show cause why the subcontract should not be subject to competition.

8.     In reliance on the Teaming Agreement, Beacon OHSS prepared a bid proposal for the subcontract work and provided it to InDyne on May 9, 2017 for use in InDyne's bid.  Beacon OHSS subsequently modified its proposal in response to questions and concerns raised by InDyne on or about May 10, 2017.

9.     By email dated October 28, 2017, InDyne informed Beacon OHSS that one of the questions submitted to InDyne by the government regarding the SPARSS procurement bid related to medical services, and asked Beacon OHSS to respond.

LANDYE BENNETT BLUMSTEIN LLP
701 WEST 8TH AVENUE, SUITE 1200
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

Beacon OHSS promptly responded with a modified staffing plan that responded to the concern expressed by the government.

10.    On January 9, 2018, InDyne informed Beacon OHSS by email that InDyne had received the Final Proposal Revision for the SSPARS procurement, and asked Beacon OHSS to confirm that the pricing it had previously submitted had not changed, and would be valid for 365 days from the January 16, 2018 submission date. Beacon OHSS promptly confirmed and guaranteed its pricing.

11.    On or about March 5, 2018, InDyne informed Beacon OHSS that InDyne had been awarded the SPARSS procurement. On information and belief, InDyne used Beacon OHSS's proposal as the basis for what was ultimately a successful InDyne bid.

12.    By email dated March 30, 2018, Beacon OHSS was provided with a draft subcontract for the SPARSS work, with blanks for the pricing. However, despite the commitments in the Teaming Agreement that InDyne would award the subcontract for medical services to Beacon OHSS, InDyne informed Beacon OHSS that it "had solicited a bid from another proposer" and that because "time is also critical we are combining the requirements in the teaming agreement for negotiations and notice to you of our decision to initiate a competition, and allowing you the opportunity to respond to disagreements we have with your proposal." A copy of this communication is attached as Exhibit B, which states for the first time that InDyne wished to change the pricing and related pricing assumptions that Beacon OHSS had previously provided and guaranteed.

LANDYE BENNETT BLUMSTEIN LLP
701 WEST 8TH AVENUE, SUITE 1200
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

13.     Beacon OHSS responded by letter dated April 4, 2018 pointing out InDyne's obligations to Beacon OHSS under the Teaming Agreement, and the fact that its apparent decision to commence a competition before InDyne had even started subcontract negotiations was a breach, as was the demand that Beacon OHSS submit new pricing despite the Teaming Agreement's requirement that the InDyne/Beacon subcontract would be "at a price consistent with [Beacon OHSS's] bid proposal."

14.     Additional correspondence was exchanged between the parties, with no resolution of the disagreement as to whether InDyne's demand for different pricing, and its negotiations with other bidder(s) for the subcontract work promised to Beacon OHSS was appropriate.

15.     By email dated April 9, 2018, Beacon OHSS informed InDyne that all terms of InDyne's proposed subcontract had been accepted with the exception of a paragraph that allowed InDyne to terminate the subcontract for convenience if it paid Beacon OHSS for work performed prior to termination.  In light of the negotiations with competitors that InDyne had already disclosed, and InDyne's apparent desire to avoid its obligations under the Teaming Agreement, Beacon OHSS was unwilling to agree to a unilateral termination clause of this nature.  Beacon OHSS also filled in the blanks of pricing with figures that were consistent with the bid proposal it had previously confirmed in January 2018.

16.     While Beacon OHSS offered to discuss other types of termination clauses, InDyne's sole response was an email dated April 10, 2018 in which it stated that it did not agree with Beacon OHSS's mark-up of the contract.

LANDYE BENNETT BLUMSTEIN LLP
701 WEST 8TH AVENUE, SUITE 1200
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

17. By email dated April 16, 2018, InDyne informed Beacon that it had decided to award the SPARRS subcontract to another bidder whose proposal was "significantly lower" in price, and which provided unspecified services beyond what was required by InDyne's prime contract. A copy of this notification is attached as Exhibit C.

## JURISDICTION AND VENUE

18. Plaintiff Beacon OHSS is a resident of Anchorage, Alaska.

19. Jurisdiction is conferred upon the Court by AS 22.10.020(g).

20. Venue is proper in this court as the claim arose in this this district.

## FIRST CAUSE OF ACTION: BREACH OF EXPRESS AND IMPLIED CONTRACTUAL OBLIGATIONS

21. Plaintiff Beacon OHSS realleges the allegations set forth in the above paragraphs as though fully set forth herein.

22. Defendant InDyne owes Plaintiff Beacon OHSS a duty to comply with the express terms of the agreements it has signed, as well as with the implied covenant of good faith and fair dealing.

23. Defendant InDyne has breached its express and implied duties by, among other things, failing to abide by the terms of the Teaming Agreement, failing to exert its best efforts to ensure that a subcontract with Beacon OHSS was entered into, failing to make every reasonable effort to subcontract with Beacon OHSS, demanding that Beacon OHSS provide a price that was inconsistent with its bid proposal as a condition of obtaining a subcontract, initiating a competition for the

work promised to Beacon OHSS without providing proper notification to Beacon OHSS, proposing a contract term on unilateral termination for convenience that would render the contract illusory with regard to Beacon OHSS, failing to enter into good faith negotiations, awarding a contract to a subcontractor for reasons not allowed by the Teaming Agreement, and generally acting in bad faith in an attempt to ignore its obligations under the Teaming Agreement and to deprive Beacon OHSS of the benefits owed to it.

24.     On information and belief, InDyne also provided reasons that were not true for its desire to have Beacon OHSS provide new pricing, and InDyne's failure to raise alleged pricing issues prior to the award of the prime contract.

25.     Plaintiff Beacon OHSS has been damaged by Defendant InDyne's conduct in an amount to be proven at trial.

## SECOND CAUSE OF ACTION: UNFAIR TRADE PRACTICES ACT

26.     Plaintiff Beacon realleges the allegations set forth in the above paragraphs as though fully set forth herein.

27.     The above described conduct by InDyne is an unfair act or practice in the course of trade and commerce, and a violation of the Alaska Unfair Trade Practices and Consumer Protection Act, AS 45.50.471.

28.     As a result of these actions, Plaintiff Beacon OHSS has suffered damages, and is also entitled to statutory damages in an amount three times the actual damages, and full reasonable attorney fees as provided in AS 45.50.531 and AS 45.50.537(a).

LANDYE BENNETT BLUMSTEIN LLP
701 WEST 8TH AVENUE, SUITE 1200
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

WHEREFORE, Plaintiff Beacon OHSS prays for the following relief:

1.    That Beacon OHSS be awarded damages for InDyne's breach of its express and implied contractual duties in an amount to be proven at trial;

2.    That Beacon OHSS be awarded monetary damages and statutory damages on its Unfair Trade Practices Act claim;

3.    That Beacon OHSS be awarded attorney's fees and costs; and

4.    That such other and further relief as the Court deems equitable and just be awarded.

Dated this 19th day of April, 2018.

LANDYE BENNETT BLUMSTEIN LLP
Attorneys for Plaintiff Beacon Occupational
Health & Safety Services, Inc.

By: _Jennifer M Coughl_

Jennifer M. Coughlin, Alaska Bar No. 9306015
701 W. 8th Avenue, Suite 1200
Anchorage, AK 99501
Phone : 907-276-5152
Fax : 907-276-8433
Email : jenniferc@lbblawyers.com

LANDYE BENNETT BLUMSTEIN LLP
701 WEST 8TH AVENUE, SUITE 1200
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 276-5152, FAX (907) 276-8433

COMPLAINT
*Beacon Occupational Health & Safety Services, Inc. v. InDyne, Inc.*, Case No. 3AN-18-      CI
Page 8 of 8
Case 3:18-cv-00115-TMB   Document 1-1   Filed 05/15/18   Page 11 of 23A, p. 11



**DRAFT**

**TEAMING AGREEMENT (PRIVATE)**
**BETWEEN**
**INDYNE, INC.**
**AND**

**BEACON OCCUPATIONAL HEALTH & SAFETY SERVICES, INC.**

THIS TEAMING AGREEMENT, made and entered into as of the last date signed below, by and between InDyne, Inc., hereinafter referred to as "InDyne," a Maryland corporation with offices located at 11800 Sunrise Valley Dr., Suite. 250; Reston, VA 20191; and Beacon Occupational Health & Safety Services, Inc., hereinafter referred to as "Beacon OHSS," an Alaskan corporation with offices located at 800 Cordova Street, Anchorage, Alaska 99501.

**WITNESSETH**

WHEREAS, the above identified parties, because of their capabilities, have determined that they would benefit from an arrangement between their respective corporations, to develop the best management and technical approach to the **Solid State Phased Array Radar System (SSPARS)** procurement (hereinafter referred to as "the Program"), in response to **Solicitation Document Number FA2517-15-R-8001**, to be procured by the United States Air Force (hereinafter referred to as "The Customer"). In the event of a contract award arising out of these premises, the parties agree that InDyne shall be the prime contractor, hereinafter referred to as "the Prime," and Beacon OHSS shall be the Subcontractor, hereinafter referred to as "the Sub," for the particular portions of such Program as identified herein; and

WHEREAS, the Prime and the Sub have agreed to enable each party to enjoy the benefits of the other party's capabilities in areas of work that are not independently available within the respective companies;

NOW, THEREFORE, in consideration of the mutual promises hereinafter contained, the parties hereto agree as follows:

1.  Each party will exert its best efforts to produce a proposal or proposals that will cause the selection of the prime contractor for the Program and the acceptance of the Sub as the subcontractor for the work assigned to the Sub herein, and each party will continue to exert its best efforts towards this objective through any and all negotiations concerning a proposed contract or subcontract that may follow the submission of such proposal or proposals.

2.  It is understood that the Prime will, in any proposal that the parties submit and in all discussions with respect thereto, identify the Sub as a team member, and will state in such proposal or discussions the relationship of the parties as hereinafter set forth and the areas of endeavor, tasks, and responsibility of the Sub as set forth in the attached Exhibit A. Changes to Exhibit A will be accomplished as mutually agreed to in writing by both parties.

3.  The Sub will (upon reasonable notification) make available management and technical personnel to assist the Prime in any discussions and negotiations with the Customer directed toward obtaining the award of a contract if requested to do so by the Prime.

4.  Each party will bear all costs, risks, and liabilities incurred by it arising out of its obligations and efforts under this agreement during the pre-proposal and proposal periods, which are defined as the periods up to the award of a prime contract. However, the Prime will be responsible for graphic arts, printing, binding and delivery costs of the proposal. Neither party shall have any right to any reimbursement payment or compensation of any kind from the other during the period up to the award of a prime contract and related subcontract.

5.  The Prime will have the sole right to decide the form and content of all documents submitted to the Customer; however, the Prime will afford the Sub the opportunity to review the form and the content of the Subcontractor's portion of the proposal and will make reasonable efforts to insure that the Sub's data is adequately portrayed and identified as the Sub's portion. The Sub will offer the Prime its advice and aid, and will prepare the substantive content of its area of the proposal and other data. Except for the cost volume, the Prime will provide to the Sub that portion of the proposal submitted to the Customer that includes any effort to be performed by the Sub.

Case 3:18-cv-00115-TMB    Document 1-1    Filed 05/15/18    Page 12 of 23   Ex. 3A, p. 12



6. If, during the period of this agreement, a prime contract is awarded to the Prime as a result of the proposal, the Prime will, subject to the approval of the Customer, if such approval is required under the terms of the Prime contract, regulations and applicable law, enter into negotiations with the Sub for a subcontract to be mutually agreed upon between the parties and subject to the stipulation that such an agreement be reached within a reasonable period of time. The Prime will make every reasonable effort to subcontract to the Sub that portion of the work set forth in the attached Exhibit A of this agreement. Said work is to be performed by the Sub in accordance with the schedule and technical specifications, if any, and at a price, consistent with the Subs' bid proposal. The terms and conditions of the subcontract will be generally consistent with the terms and conditions in the prime contract. It is agreed that said terms and conditions will not conflict with government rules, regulations and applicable law.

7. It is agreed between the parties that the Prime shall be prime contact with potential customers or interested Government agencies concerning the Program. In the event it becomes desirable for the Sub to contact a potential customer or interested government agency concerning the Program, such contact shall be approved by the Prime to insure coordination of efforts and understanding of commitments prior to such contact.

8. Although the Prime is contemplated as the prime interface with the Customer, it is recognized that the Sub has continuing relations with the Customer and may be the recipient of inquiries concerning the subject matter of this agreement. Therefore, any communications invited by the Customer directly with the Sub concerning any matter involving this agreement shall not be deemed to be a breach of this agreement. The Sub will, however, promptly advise the Prime of such inquiries.

9. In the event the Prime should be requested or is presented the opportunity to make presentations whether orally or by written communications to the Customer, a potential customer or interested Government agencies concerning the Program, the content of the presentation thereof shall be made immediately known to the Sub, subject to any prohibitions or restrictions that may be imposed, and the Sub will support such presentations as directed by the Prime if it relates to the Sub's area of work as defined in the attached Exhibit A.

10. Any news releases, public announcements, advertisements or publicity released by either party concerning this agreement, or any proposals, or any resulting contracts or subcontracts to be carried out hereunder, will be subject to prior approval of the other party, except that this agreement and the terms thereof may be made known to the U.S. Government. Any such publicity shall give due credit to the contribution of each party.

11. The parties each will designate in writing one or more individuals, within their own organization, as their representative(s) responsible to direct performance of the party's necessary functions. Such representative(s) shall be responsible to effectuate the requirement and responsibilities of the parties under this agreement.

12. During the term of this teaming agreement, the parties hereto may exchange proprietary and/or confidential information including but not limited to performance, sales, financial, contractual, and technical data (as the latter term is defined in DFARS 52.227-7013). All such proprietary or confidential information shall be exchanged and handled in accordance with the Non-disclosure Agreement between the parties dated ~~March 23, 2017~~ May 7, 2017

~~PH~~
ckw 5/21/17

13. This agreement shall remain in effect until the first of the following shall occur:

   a. Upon mutual written agreement of the parties to terminate this teaming agreement.

   b. An official Customer announcement that the Program has been canceled.

   c. Upon the award of a prime contract for the subject RFP to a contractor(s) other than the Prime.

   d. Award of a prime contract to the Prime and execution of a subcontract with the Sub.

   e. The Prime is unable to obtain Customer approval of the Sub as a subcontractor to the Prime, and the terms of the subcontract between the Prime and the Sub cannot reasonably be altered or changed to effect approval thereof by the Customer.

   f. Significant changes to the Program that make it impracticable or unadvisable for Prime and/or Sub to pursue the Program.

   g. Inability of the Prime and the Sub, after negotiating in good faith, to reach agreement on the terms of a subcontract offered by the Prime, in accordance with this agreement.



h.    Two years after effective date of this agreement.

The termination of this agreement shall not supersede the obligation of the parties with respect to the protection of proprietary information.

14.    The Sub will _____/will not _X___ participate exclusively with the Prime as to Program work identified in Exhibit A. If the Sub agrees to participate exclusively with the Prime, the Sub agrees not to actively participate in other team efforts that are competitive to this teaming agreement nor compete independently for Program work, identified in Exhibit A, for the duration of this agreement. The term "active participation," as used herein, includes the interchange of technical data with competitors.

15.    If agreement cannot be reached on the terms of a subcontract, the Prime may procure a subcontract for the tasks and items described in Exhibit A through competition, including the Sub. However, before a decision is made to initiate a competition, the Sub shall be notified in writing of the specific area in dispute and shall be afforded the opportunity to show cause why the subcontract should not be subject to competition.

16.    All notices, certificates, acknowledgments and other reports hereunder shall be in writing and shall be deemed properly delivered when duly mailed by registered letter to the other party at its address as follows, or to such other address as either party may, by written notice, designate to the other.

| PRIME | [SUB] |
|---|---|
| InDyne, Inc. | Beacon Occupational Health & Safety Services, Inc. |
| 11800 Sunrise Valley Dr., Ste. 205 | 800 Cordova Street |
| Reston, VA 20191 | Anchorage, Alaska 99501 |
| Attention: C. Donald Bishop | Attention: Mark Hylen |
| Title: President | Title: Vice President |

17.    This agreement is not intended by the parties to constitute or create a joint venture, pooling arrangement, partnership, or formal business organization of any kind other than a contractor team arrangement as set forth in FAR 9.6 and the rights and obligations of the parties shall be only those expressly set forth herein. Neither party shall have authority to bind the other.

18.    If any invention is made exclusively by the employee(s) of one party in connection with the effort under this agreement, title to said invention and to any patent(s) issuing thereof shall be in said one party. The Sub shall have title to any such invention(s) and patent(s) issuing thereof made jointly by the employees of the Sub and the Prime in those technical areas for which the Sub is primarily responsible in this joint effort, subject to a non-exclusive, royalty-free license to the Prime under such invention(s) and any patent(s) issuing thereon to make, have made, use, lease or sell products and/or processes incorporating such invention(s). The Prime shall have title to any such invention(s) and any patent(s) issuing thereof made jointly for those technical areas for which the Prime is primarily responsible in this joint effort, subject to a non-exclusive, royalty-free license to the Sub under such invention(s) and any patent(s) issuing thereon to make, have made, use, lease or sell products and/or processes incorporating such invention(s). Jointly-made invention(s) that cannot reasonably be said to fall within the technical areas assigned to either party under this effort shall be owned jointly by the Sub and the Prime without accounting to the other. Any ownership rights or licenses provided for hereunder shall survive the termination of this agreement. Except as provided herein, neither party shall be considered to have granted to the other license(s) under any other patent or trade secret of the disclosing party.

19.    The Parties and their employees shall not disclose any information furnished hereunder in any manner contrary to the laws and regulations of the United States of America, or any agency, thereof, including but not limited to, the Export Administration Regulations of the U.S. Department of Commerce, the International Traffic in Arms Regulations of the U.S. Department of State and the National Industrial Security Program operating Manual (DOD 5220.22-M).

20.    This agreement may not be assigned or otherwise transferred by either party in whole or in part without express written consent of the other party, whose consent will not unreasonably be withheld. The foregoing shall not apply in the event either party shall change its corporate name or merge with another corporation.

Case 3:18-cv-00115-TMB   Document 1-1   Filed 05/15/18   Page 14 of 23A, p. 14



21. If any part, term or provision of this agreement shall be held void, illegal, unenforceable, or in conflict with any law of a federal, state or local government having jurisdiction over this agreement, the validity of the remaining portions of provisions shall not be affected thereby.

22. To the extent the obligations of the parties hereunder involve access to security information, classified U.S. Government "Confidential" or higher, the provisions of applicable government regulations shall apply.

23. During the period that this agreement is in effect, each party agrees not to solicit for employment, hire, or otherwise proselytize any technical or professional employees of the other party assigned to work on the resultant contract without prior written approval of the other party. The parties further agree to include a provision similar to the above in any resultant contract. Provided, however, that nothing in this paragraph 23 shall prohibit any employee from either party from responding to advertisements in the general media and there shall be no restrictions on the hiring of the individual employee so responding.

24. This agreement shall be enforced and interpreted under the laws of the Commonwealth of Virginia, excluding its conflict of law principles.

25. This agreement shall not be amended or modified, nor shall any waiver or any right hereunder be effective unless set forth in a document executed by duly authorized representatives of both the Prime and the Sub. The waiver of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition or any subsequent breach of the same.

26. This agreement contains all of the agreements, representations and understandings of the parties hereto and supersedes and replaces any and all previous understandings, commitments, or agreements, oral or written, related to the award of a contract under the Program set forth herein.

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the date herein above indicated.

INDYNE, INC.

SIGNED BY: _Claire K White_

NAME (TYPE): _Claire White_

TITLE: _Contracts Administrator_

DATE: _5/21/2017_

BEACON OCCUPATIONAL HEALTH & SAFETY SERVICES, INC.

SIGNED BY: _____

NAME (TYPE): _Mark Hyler_

TITLE: _Vice President_

DATE: _5/20/2017_

Case 3:18-cv-00115-TMB   Document 1-1   Filed 05/15/18   Page 15 of 23A, p. 15



# EXHIBIT A

## Statement of Work

It is the intent of the Prime, upon competitive award of a prime contract for the Program to InDyne, for the Sub to perform services in the following areas of the Solicitation's performance work statement (PWS):

**Clear AFS:**

PWS 2.14 Medical Services

Case 3:18-cv-00115-TMB   Document 1-1   Filed 05/15/18   Page 16 of 23A, p. 16



TO:       Beacon Occupational Health & Safety Services, Inc.

ATTN:    Mark Hylen

DATE:    March 30, 2018

SUBJECT: Request for Best and Final Offer, Medical Services; Solid State Phased Array Radar
              System (SSPARS), Government Solicitation FA2517-15-R-8001

Please find attached enclosure 1: Subcontract PWS Medical Srvcs RFQ 7 Mar 2018; and
enclosure 2: Draft Beacon HOSS SSPARS Subcontract.

As you know, InDyne was awarded the SSPARS contract. As the teaming agreement was non-
exclusive, we have solicited a bid from another proposer.   Because time is also critical we are
combining the requirements in the teaming agreement for negotiations and notice to you of our
decision to initiate a competition, and allowing you the opportunity to respond to disagreements
we have with your proposal. We are therefore asking that you submit a best and final offer
consistent with the instructions below.

Your BAFO quote shall include fixed cost pricing of all medical/emergency/ALS Ambulance
and public health services IAW the SSPARS PWS para 2.14 Medical and Public Health
Services, as well as procurement of all necessary medical equipment (such as X-ray, EKG,
autoclave etc.), medical supplies, pharmaceutical and over the counter medications, emergency
medications, and ambulance, and all provisions, equipment, supplies and insurance related to
operating and maintaining an ambulance service. Equipment will be maintained and replaced as
needed at sub-contractor's expense. Additionally, as the standards of care evolve, subcontractor
will acquire the necessary resources to deliver this care at subcontractor expense. Examples of
this would include cutting edge, life-saving medications or equipment, advanced imaging (such
as ultrasound), increased instant lab capabilities, or advanced medication or oxygen delivery
systems. Provide Mutual Aid off-base response in emergency and humanitarian situations on
non- reimbursable basis.

We do not agree with your proposal assumptions. Remove all assumptions in your May 9, 2017
proposal that refer to the prime contractor as responsible for providing the service or incurring
related costs. By way of example, baseline vaccinations, HepA&B - $750-$1000, IT related
radios, costs associated with off base/community care, TKN, etc. In addition, we do not agree
with the TRICARE pricing with respect to the assumption stated in your proposal that, "Any
recuperated TRICARE or Insurer benefits will be passed through back to the contractor [prime],
as part of a formalized program at cost less 30% administration fees, billed through Beacon
OHSS as part of a formal program . . . ." Please remove this assumption. Beacon's proposal
should be based on Beacon retaining any reimbursement of TRICARE or Insurer benefits. Your



proposal shall include all services and meet all requirements of SSPARS PWS Medical 2.14 as subcontractor provided and be included within your fixed price accordingly.

We're looking forward to receipt of your most competitive proposal in response to this request. Please submit this BAFO no later than close of business on Friday, April 6.

Sincerely,



CLAIRE K. WHITE
Contracts Administrator

Enclosure.

| | |
|---|---|
| **From:** | White, Claire <cwhite@indyneinc.com> |
| **Sent:** | Monday, April 16, 2018 6:09 AM |
| **To:** | Mark Hylen; Jennifer Coughlin; Colin Gilbert |
| **Subject:** | RE: InDyne/Beacon subcontract |

Mark/Colin/Ms. Coughlin,

We have decided to make an award to another bidder. That bidder's proposal was significantly lower in price, contained no assumptions, and provided services and aspects to its proposal that went above the requirements of PWS § 2.14.

If you have questions or would like to discuss please feel free to call me at 703-628-1093.

Claire

Claire K. White
Contracts Administrator & General Counsel
InDyne, Inc.
Phone: 703-628-1093
Email: cwhite@indyneinc.com

NOTE: This e-mail is from an in-house attorney, Claire K. White, of InDyne, Inc., and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an employee of InDyne, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to Ms. White in reply that you expect it to hold in confidence. If you properly received this e-mail as an employee of InDyne, co-counsel or retained expert of InDyne, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

**From:** White, Claire
**Sent:** Tuesday, April 10, 2018 3:42 PM
**To:** 'Jennifer Coughlin' <jenniferc@lbblawyers.com>
**Subject:** RE: InDyne/Beacon subcontract

Dear Ms. Coughlin,

Thank you for the mark-ups on the subcontract, which we do not agree with. You are wrong in saying that InDyne has "shopped the pricing provisions around". We have not disclosed Beacon's pricing to any competitor or proposer. You are wrong in characterizing my previous letter and email as simply asking for a reconfirmation of pricing. They cannot be reasonably read to mean that. My March 30, 2018 letter told Mark that we had a bid from another proposer. I asked Mark Hylen for "your most competitive proposal". I told Mark that InDyne did not agree with its proposal assumptions and I asked Mark to remove all assumptions in its May 9, 2017 proposal referring to the contractor having responsibility for services or costs, and to change the TRICARE pricing assumptions. My April 5, 2018 email told you that InDyne made significant across the board changes to be competitive which we could not share with Beacon at the time because they were not

1

Exhibit C
Page 1 of 4

exclusive. We have clearly communicated InDyne's expectation that Beacon would reduce its prior pricing with its best and final offer and remove its May 9, 2017 assumptions as part of this negotiation process. Based upon your April 9, 2018 email, and two previous letters, we will evaluate Beacon's best and final offer as being the revised pricing it submitted November 8, 2017, and that this pricing is based upon the same assumptions contained in its May 9, 2017 proposal. We will advise you of InDyne's decision.

I understand that Colin put a call in to Andre Lovett. Andre's not involved in the subcontract negotiations. If there's something I can help with, Colin can give me a call.

Thanks,
Claire

Claire K. White
Contracts Administrator & General Counsel
InDyne, Inc.
Phone: 703-628-1093
Email: cwhite@indyneinc.com

NOTE: This e-mail is from an in-house attorney, Claire K. White, of InDyne, Inc., and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an employee of InDyne, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to Ms. White in reply that you expect it to hold in confidence. If you properly received this e-mail as an employee of InDyne, co-counsel or retained expert of InDyne, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

From: Jennifer Coughlin [mailto:jenniferc@lbblawyers.com]
Sent: Monday, April 09, 2018 6:37 PM
To: White, Claire <cwhite@indyneinc.com>
Subject: RE: InDyne/Beacon subcontract

You started negotiations with us by announcing that you had already solicited competing bids for the subcontract you committed to provide to Beacon in the teaming agreement, and asking us to provide "best and final" pricing with that in mind. We interpreted both the solicitation and the request for additional pricing as a clear violation of the agreement, given that the parties had already agreed that Beacon's pricing would be consistent with what it had previously provided and your commitment not to seek to replace Beacon until after good faith negotiations on terms other than those set in the teaming agreement had failed. If that was a misperception, and you were simply asking for a reconfirmation of pricing, I apologize. With that in mind, we will confirm that the pricing we provided last fall, and confirmed in January 2018 would be binding for 365 days, is still our best and final pricing. We have modified your draft subcontract to include those figures, and have added in termination liability pricing as well in the event that the government no longer provides funding, see attached. (It should be noted that the pricing Beacon originally submitted in May 2017 was revised in October to include additional staffing as requested by the government in clarification questions to InDyne and reaffirmed with Andre Lovett as the final proposal revisions in January 2018.)

With regard to the other terms in your draft, a redlined version is attached. As you can see, our primary concern is with H07, the unilateral termination for convenience provision which allows InDyne to terminate the relationship simply upon written notice, with payment limited to work performed prior to termination. Given the fact that you shopped the pricing provisions around before even opening negotiations with us, we are concerned that this provision would make

2

Exhibit C
Page 2 of 4

this multi-year contract illusory by allowing you to award Beacon the contract on Day 1, then declare it terminated for convenience on Day 2. We would be willing to discuss a reasonable termination for convenience clause (such as one linked to any termination for convenience initiated by the government regarding the prime contract, one that only becomes effective after a certain number of years, a broader description of what might constitute for-cause termination, etc.) but the one you proposed is unacceptable.

Beacon continues to be fully committed to this project and to working with InDyne, just as Beacon has done throughout the proposal efforts.

Jennifer M. Coughlin, Attorney
Landye Bennett Blumstein LLP
701 West 8th Avenue, Suite 1200
Anchorage, AK 99501
907.276.5152 (w)
907.868.9293 (d)
907.276.8433 (f)
www.lbblawyers.com

*Please consider the environment before printing this e-mail. Thank you.*

*This e-mail is for the sole use of the intended recipient(s) and contains information belonging to Landye Bennett Blumstein LLP, which is confidential and/or legally privileged. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance on the contents of this e-mail information is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by reply e-mail and destroy all copies of the original message.*

**From:** White, Claire <cwhite@indyneinc.com>
**Sent:** Monday, April 09, 2018 10:12 AM
**To:** Jennifer Coughlin <jenniferc@lbblawyers.com>
**Subject:** RE: InDyne/Beacon subcontract

Dear Ms. Coughlin,

I am in receipt of your April 6, 2018 letter. I disagree with your interpretation of the Teaming Agreement and the parties' rights and obligations under it. The Teaming Agreement clearly anticipates that the parties will enter into negotiations for a subcontract if InDyne is awarded the prime contract. My March 30, 2018 letter and attachments to Colin Gilbert started those negotiations. Mr. Gilbert's March 30, 2018 reply was the type of response we expected when he said "Typically, in our experience post Prime award, we work under the teaming agreement to ensure optimal pricing and operational delivery in negotiating the sub-contract." Your two letters are inconsistent with that approach and I see no point in further debating the interpretation of the parties' rights and obligations under the Teaming Agreement.

I understand from your April 6, 2018 letter that Beacon does not intend to respond to our proposed subcontract terms and conditions, unless and until InDyne agrees to the pricing and assumptions contained in its proposal, which are not subject to further negotiations. We will proceed based upon that understanding and advise you of our decision.

Thank you,
Claire

Claire K. White
Contracts Administrator & General Counsel
InDyne, Inc.
Phone: 703-628-1093
Email: cwhite@indyneinc.com

3

Exhibit C
Page 3 of 4

Case 3:18-cv-00115-TMB   Document 1-1   Filed 05/15/18   Page 21 of 23A, p. 21

NOTE: This e-mail is from an in-house attorney, Claire K. White, of InDyne, Inc., and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an employee of InDyne, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to Ms. White in reply that you expect it to hold in confidence. If you properly received this e-mail as an employee of InDyne, co-counsel or retained expert of InDyne, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

**From:** Jennifer Coughlin [mailto:jenniferc@lbblawyers.com]
**Sent:** Friday, April 06, 2018 4:26 PM
**To:** White, Claire <cwhite@indyneinc.com>
**Subject:** InDyne/Beacon subcontract

Please see the attached letter.



**LANDYE BENNETT**
**BLUMSTEIN** LLP
A T T O R N E Y S
Simply Great Lawyers
**www.lbblawyers.com**

**Jennifer M. Coughlin | Partner**

**jenniferc@lbblawyers.com**

Suite 1200          907.276.5152 (w)
701 West 8th Avenue   907.868.9293 (d)
Anchorage, Alaska 99501  907.276.8433 (f)

**Please consider the environment before printing this e-mail**

This e-mail is for the sole use of the intended recipient(s) and contains information belonging to Landye Bennett Blumstein LLP, which is confidential and/or legally privileged. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance on the contents of this e-mail information is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by reply e-mail and destroy all copies of the original message.

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com



IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT _____ANCHORAGE_____

| | |
|---|---|
| Beacon Occupational Health & Safety Services, Inc., <br>            Plaintiffs, <br> v. <br> InDyne, Inc., <br>            Defendants. | CASE NO. <u>3AN-18-06353CI</u> <br><br> **NOTICE OF CHANGE OF** <br> ☒ **JUDGE** ☐ **MAGISTRATE JUDGE** <br> **(PEREMPTORY CHALLENGE)** |

The ☒ plaintiff/petitioner ☐ defendant/respondent ☐ other party: _____
in this case peremptorily challenges the assignment of <u>Judge Washington</u> _____
pursuant to Civil Rule 42(c) or Criminal Rule 25(d).

Names and addresses of all parties (or their attorneys) in this case are as follows (please attach additional sheet if necessary):

InDyne, Inc.
CSC-Lawyers Incorporating Service Company
7 St. Paul Street, Suite 820
Baltimore, MD 21202

I certify that a copy of this *Notice* was sent to each of the persons listed above.

| | |
|---|---|
| 04/23/2018 _____ <br> Date | *Jennifer M Coughlin* <br> Signature of Party or Attorney <br> Jennifer M. Coughlin, Ak Bar No. 9306015 <br> Type or Print Name |

---

**FOR COURT USE ONLY**

If there is an existing CINA, adoption, guardianship, or custody case involving the parties above, and this peremptory challenge is filed in a subsequent action (in one of the case types listed above), route this peremptory challenge to the presiding judge for decision.

Notice is: ☐ timely ☐ not timely
A peremptory challenge ☐ has not been previously filed.
                 ☐ has been previously filed by: ☐ plaint./pet. ☐ def./resp. ☐ other party

| | |
|---|---|
| _____ <br> Date | _____ <br> Clerk / Judge |

**ORDER**

☐ This case is reassigned to ☐ Judge ☐ Magistrate Judge _____
☐ This *Notice of Change of Judge* is not approved because:
       ☐ It is not timely.
       ☐ _____

| | |
|---|---|
| _____ <br> Date | _____ <br> Judge / Clerk |

| | |
|---|---|
| I certify that on _____, <br> a copy of this order was sent to: <br> ☐ Judge/Mag.Judge _____ <br> ☐ Judge/Mag.Judge _____ <br> ☐ Parties/Attys _____ <br> Clerk: _____ | _____ <br> Type or Print Name <br><br> **CALENDARING NOTICE** <br> HEARING: _____ <br> DATE AND TIME: _____ <br> LOCATION: _____ |

TF-935 (9/17)(cs)
NOTICE OF CHANGE OF JUDGE (PEREMPTORY CHALLENGE)

Civil R. 42(c), Crim. R. 25(d), AS 47.10.113, AS 25.24.150,
AS 13.26.065, and AS 25.23.030